*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0173**

Tiffany Montgomery,
Relator,

vs.

AT & T Mobility Services, LLC,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed October 5, 2015
Affirmed
Stauber, Judge**

Department of Employment and Economic Development
File No. 32838181-3

Katherine L. MacKinnon, Carrie Anne Loch, Certified Student Attorney, Law Office of Katherine L. MacKinnon, P.L.L.C., St. Louis Park, Minnesota (for relator)

AT&T Mobility Services, St. Louis, Missouri (respondent employer)

Lee B. Nelson, Timothy C. Schepers, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

        Considered and decided by Peterson, Presiding Judge; Stauber, Judge; and

Smith, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

In this unemployment-benefits appeal, relator challenges a determination by an unemployment law-judge (ULJ) that she was terminated for employment misconduct because she used a store warranty procedure to obtain goods for herself. Relator argues that the ULJ (1) abused his discretion by failing to make specific credibility determinations regarding conflicting testimony as to whether relator's use of the warranty procedure was authorized and (2) failed to fully develop the record by denying her subpoena requests. We affirm.

## FACTS

In August 2008, relator Tiffany Montgomery began working for respondent AT&T Mobility Services, LLC as a sales support representative. During her employment with AT&T, relator was responsible for processing the returned merchandise, and she had "specialized knowledge of the inventory system." She was also "in charge of making sure everybody was educated and understood how to appropriately conduct a J warranty."

A "J warranty" is a one-year warranty offered to customers by AT&T, which enables them to exchange defective products for new replacements. Generally, in order to process a J warranty exchange, a sales representative is required to confirm that the product was purchased from AT&T within the past year by checking the customer's sales receipt or by examining the customer's electronic purchase records in AT&T's sales system. A J warranty exchange also generally requires the customer to surrender the defective item.

On July 21, 2014, relator took a new pair of LG headphones from the sales floor and instructed a subordinate sales representative to process her receipt of the headphones as a J warranty exchange. In conducting the transaction for the headphones, relator did not purchase the new headphones. She also did not return any old headphones, nor did she provide proof of previously purchasing headphones from AT&T within the previous year. A few days later, assistant manager Aaron Dreis discovered the transaction through his weekly review of company records. He then reviewed surveillance footage and relator's account, and determined that relator took the headphones without paying for them. Further investigation was conducted and, during an interview, relator lied to the investigator, telling him that she had surrendered an old set of headphones in exchange for the new headphones.

AT&T discharged relator on September 8, 2014, for theft of the headphones. Relator subsequently applied for unemployment benefits, and respondent Department of Employment and Economic Development (department) initially determined that relator was eligible for benefits because she was discharged for reasons other than employment misconduct. AT&T appealed that determination, and a de novo hearing was conducted.

At the hearing, relator testified that she used the J warranty process to obtain a new set of LG headphones and that a similar exchange had been recently made by her assistant manager Mitch Dosh for a cellphone case. Although relator admitted that as part of her J warranty exchange for the new headphones, she did not surrender the defective headphones, did not provide proof of purchase of the defective headphones, and did not purchase the old headphones within a year of making the J warranty exchange,

3

she claimed that the J warranty exchange process was very flexible. According to relator, a J warranty exchange did not require a customer to return the faulty item. She also claimed that a sales representative could process a J warranty exchange if more than one year had transpired since the defective product had been purchased if a manger approved the transaction. Relator testified that she consulted with Dosh, and her manager, Chang Huang, about using the J warranty process to exchange an old set of headphones for the new set of LG headphones, and that they gave her permission to make the exchange. Relator further claimed that she and Huang walked "around the diamond on the sales floor with another" sales representative on July 21, 2014, looking at the different headsets.

Former sales associates Nicki Korson and Sarah Mueller testified on relator's behalf and corroborated relator's claim that the general procedures governing J warranty exchanges were not always strictly enforced. But Dosh, Dreis, and Huang testified that relator was never given permission to conduct a J warranty exchange for the new headphones.

The ULJ found testimony from AT&T's employees that relator was not authorized to conduct a J warranty exchange for her headphones to be credible. The ULJ then found that relator's decision to "circumvent AT&T's policy for exchanging defective items was a serious violation of the standards of behavior the employer had a right to reasonably expect of her." Thus, the ULJ concluded that relator was ineligible for unemployment benefits because she was discharged for employment misconduct. Relator requested reconsideration, and the ULJ affirmed the decision. This certiorari appeal followed.

4

**D E C I S I O N**

**I.**

This court "may reverse or modify the [ULJ's] decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are" not supported by substantial evidence in the record or are affected by an error of law. Minn. Stat. § 268.105, subd. 7(d)(4)-(5) (2014).

An applicant who is discharged from employment because of employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). Whether an employee committed misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether an employee committed a particular act is a question of fact. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But whether a particular act demonstrates employment misconduct is a question of law, which this court reviews de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

Where, as here, credibility is central to the ULJ's decision, the ULJ is required to "make credibility findings and to 'set out the reason for crediting or discrediting' the contested testimony." *Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 29 (Minn. App. 2007) (quoting Minn. Stat. § 268.105, subd. 1(c) (Supp. 2005)). Among the

5

factors that the ULJ may consider in making a credibility determination is whether the witness's testimony is reasonable when compared with other evidence. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007). "Credibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Skarhus*, 721 N.W.2d at 345.

Relator argues in her brief and reply brief that because this "case was fact-intensive and contained numerous contradictions between multiple witnesses" the "credibility of witnesses had a significant outcome on the decision." To support her claim, relator asserts that AT&T's witnesses testified that the J warranty exchange is not flexible, while her witnesses testified that it is very flexible and used in a variety of circumstances. Relator claims that if the ULJ found her witnesses to be credible, her actions would not be misconduct, but if the ULJ found AT&T's witnesses to be credible, then her actions would be misconduct. Relator argues this because the credibility of the witnesses was "outcome-determinative," but the ULJ failed to make "*any* statutorily mandated credibility findings," a remand is necessary to determine whether relator violated AT&T's policy.

We disagree. Despite relator's claim to the contrary, any inconsistencies in witness testimony regarding AT&T's policy pertaining to J warranty exchanges is not dispositive of whether relator engaged in employment misconduct. Our review of the transcript demonstrates that all of the witnesses testified consistently with respect to J warranty exchanges. All of the witnesses testified that a J warranty exchange generally required the old defective item to be returned in exchange for a new item and that proof

6

of purchase from an AT&T store was required for a J warranty exchange. Although there were some minor discrepancies in the testimony pertaining to whether exceptions could be made for these rules, all of the witnesses, including Korson and Mueller, who testified on behalf of relator, testified that defective items could not be returned more than one year after purchase *absent manager approval*. In fact, relator admitted that some type of manager approval was necessary to conduct a J warranty exchange if the item was purchased more than one year before the date of the exchange. It is undisputed that relator did not return the defective headset at the time she used a J warranty exchange to obtain the new headset, nor did she present proof of purchase for the defective headset. And although relator claimed that she purchased the defective headset from an AT&T store, she admitted that the defective headset was purchased more than one year before she used a J warranty exchange to obtain the new headset. Based upon the undisputed testimony from all of the witnesses, manager approval was required to conduct such an exchange. Thus, the narrow dispositive issue before the ULJ was whether relator had permission from a manager to conduct the J warranty exchange for the new headset because it had been more than a year since relator purchased her old headset.

Relator testified that she had permission from her managers to conduct a J warranty exchange for the new headset. Conversely, relator's managers specifically testified that they had given no such permission. The ULJ found that the testimony from relator's managers that relator "was not authorized to J Warranty exchange her headphones was consistent, reasonable and provided a more likely sequence of events than [relator's] self-serving denial." The ULJ's finding adequately sets forth the basis for

7

his credibility determination. *See Ywswf*, 726 N.W.2d at 533 (stating that among the factors that the ULJ may consider in making a credibility determination is whether the witness's testimony is reasonable when compared with other evidence). And because Korson and Mueller had no knowledge of the events surrounding relator's termination, it was unnecessary for the ULJ to make specific credibility findings pertaining to Korson and Mueller's testimony. Therefore, a remand for further credibility findings is unnecessary.

Because the ULJ found that relator did not have permission to conduct a J warranty exchange for the headset, the issue becomes whether relator's J warranty exchange for the headset constituted employment misconduct. "Dishonesty that is connected with employment may constitute misconduct." *Icenhower v. Total Automotive, Inc.*, 845 N.W.2d 849, 856 (Minn. App. 2014) (quotation omitted), *review denied* (Minn. July 15, 2014). In *Cherveny v. 10,000 Auto Parts*, this court concluded that "[r]elator's dishonesty in an investigation by the employer into an alleged theft of employer's goods was misconduct sufficient to disqualify relator from unemployment compensation benefits." 353 N.W.2d 685, 688 (Minn. App. 1984); *see also Skarhus*, 721 N.W.2d at 344 (holding that employee's single incident of theft from employer has significant adverse impact on employer and constitutes employment misconduct). And a warning is not required before an employee's termination for employment misconduct results in the disqualification for unemployment benefits. *See Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn. 1981) (stating that warning was not essential to demonstrate employees acted in willful disregard of employer's interest).

Here, the ULJ found that relator did not have permission to conduct a J warranty exchange for the new headset. The ULJ also found that relator was dishonest during the investigation of the J warranty exchange for the headset when she told the investigator that she had surrendered her old, defective headset at the time of the J warranty exchange. The ULJ's findings are supported by the record. Accordingly, the ULJ did not err by concluding that relator was discharged for employment misconduct.

## II.

A ULJ "must exercise control over the hearing procedure in a manner that protects the parties' rights to a fair hearing," and "must ensure that all relevant facts are clearly and fully developed." Minn. R. 3310.2921 (Supp. 2014). To serve that purpose, a ULJ "may issue subpoenas to compel . . . the production of documents . . . upon a showing of necessity by the requesting party." Minn. R. 3310.2914, subp. 1 (Supp. 2014). "A request for a subpoena may be denied if the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious." *Id.* On appeal, a ULJ's denial of a subpoena request is reviewed for an abuse of discretion. *Icenhower*, 845 N.W.2d at 853.

Relator argues that the ULJ abused its discretion by denying her subpoena requests for (1) a copy of the surveillance footage inside the store for the entire day of July 21, 2014; (2) AT&T's records of Dosh's personal warranty exchanges; (3) employee mobility discount records; and (4) her personal discipline and transaction records.

A.    **Surveillance video**

At the de novo hearing, relator requested that the ULJ subpoena a copy of the surveillance footage for July 21, 2014.  Relator sought the video in order to corroborate her claim that she had permission to conduct a J warranty exchange for the headphones because the video allegedly showed her walking around the store with Huang looking at "headphones for her."  The ULJ concluded that a subpoena for the video was unnecessary because the video had no audio, which would make it impossible to determine from the video whether relator had "approval from . . . Huang or . . . Dosh to J warranty her headset."

Relator argues that by declining to subpoena the video, the "ULJ failed in the statutory obligation to ensure that all relevant facts are clearly and fully developed."[1]  But as we discussed above, the only relevant issue in dispute is whether relator had permission to conduct a J warranty exchange for the headphones.  Because the video lacks audio, it fails to resolve this issue.  As the department points out, although the video might corroborate relator's claim that she walked around the store with Chang on July 21, 2014, "one could only speculate as to the nature and purpose of [relator and Chang's] interaction."  Therefore, the video was irrelevant, and the ULJ did not abuse its discretion by denying relator's request to subpoena the video.

---

[1] Relator also claims that we should require the ULJ on remand to impose an adverse-inference sanction upon AT&T for its spoliation of the surveillance video.  But relator's spoliation claim is being raised for the first time on appeal and, therefore, the claim is not properly before us.  *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that this court will generally not consider arguments raised for the first time on appeal).

10

**B.      Dosh's warranty exchange**

Relator also challenges the ULJ's denial of her request to subpoena Dosh's personal warranty exchanges.  Relator claims that Dosh used a J warranty exchange to process a transaction for his own personal cell-phone case.  Because he denied doing a J warranty exchange for the case, relator claims that his personal records would corroborate her testimony and support her "contention that AT&T permitted the 'J' transactions."

Relator is unable to establish that the ULJ abused its discretion by failing to subpoena Dosh's personal warranty exchanges.  Again, the issue in this case is whether relator had permission to conduct a J warranty exchange for her headphones.  Any records pertaining to Dosh's personal warranty exchanges would not have resolved this issue.  Consequently, Dosh's warranty-exchange records were irrelevant to the issue of permission.  Moreover, it is well settled that a violation of an employer's policies by others is not a defense to employment misconduct.  *Dean v. Allied Aviation Fueling Co.*, 381 N.W.2d 80, 83 (Minn. App. 1986); *see also Sivertson v. Sims Sec., Inc.*, 390 N.W.2d 868, 871 (Minn. App. 1986) (stating that whether or not other employees violated same rules and were disciplined or discharged was not relevant to the present case), *review denied* (Minn. Aug. 20, 1986).  Therefore, even if Dosh failed to follow company policy in exchanging his case, such conduct would not excuse relator's failure to follow AT&T's policy.

## C.     Employee mobility discount records

Relator argues that the "ULJ failed to ensure that all relevant facts were clearly and fully developed when he dismissed as irrelevant employee mobility discount records." Relator claims that these records would be an "unbiased report to establish how a 'J' transaction occurred in normal business, including how [relator] had previously performed the transactions, which would have also helped resolve directly contradicting testimony." But again, the uncontradicted testimony was that relator needed manager approval to process her J warranty transaction for the headphones. The employee mobility discount records were irrelevant to establishing whether such approval had been granted.

## D.     Relator's personal discipline and transaction records

Relator further argues that the ULJ failed to ensure that the record was fully developed by declining to grant relator's request to subpoena her personal discipline and transaction records. But it was undisputed that relator was never disciplined for any conduct prior to her discharge. Moreover, neither her personal discipline record nor her personal transaction records were relevant to determining the dispositive issue: whether relator had manager approval to conduct her J warranty exchange for the headset. Therefore, the ULJ did not abuse its discretion by denying relator's subpoena requests.

**Affirmed.**

12